1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7   JOHN MAA, et al.,

                Plaintiffs,                    Case No.  12-cv-00200-JCS

8
                                               **ORDER GRANTING IN PART AND**
9       v.                                     **DENYING IN PART DEFENDANTS'**
                                               **MOTION TO DISMISS SECOND**
10  JAMES W. OSTROFF, et al.,                   **AMENDED COMPLAINT.**

                Defendants.                    **Dkt. No. 44**
11

12

13  **I.      INTRODUCTION**

14          Plaintiff Dr. John Maa (hereafter "Plaintiff" or "Dr. Maa") filed this action against Dr.

15  James W. Ostroff and other employees of the UCSF Medical Center and/or School of Medicine,[1]

16  alleging violations of the False Claims Act, 31 U.S.C. § 3729(a)(1) and his First Amendment

17  Rights.  On April 19, 2013, the Court granted Defendants' motion to dismiss Plaintiff's First

18  Amended Complaint ("FAC") and dismissed the FAC with leave to amend.  *See* Dkt. No. 40; *Maa*

19  *v. Ostroff*, No. 12-0200, 2013 WL 1703377 (N.D. Cal. Apr. 19, 2013) ("Order Dismissing FAC").

20          On May 20, 2013, Plaintiff filed a Second Amended Complaint ("SAC").  Defendants filed

21  a 12(b)(6) Motion to Dismiss Second Amended Complaint ("Motion").  The Court held a hearing

22  on the Motion on September 27, 2013, at 9:30 a.m.  For the reasons below, Defendants' Motion is

23

24          [1] The other Defendants named in the Second Amended Complaint are: Dr. Joshua Alder,
    the Chief Medical Officer of UCSF Medical Center; Dr. Nancy Ascher, the Chair of the
25  Department of Surgery at UCSF Medical Center; Dr. Susan Desmond-Hellmann, the Chancellor
    of UCSF; Dr. Adrienne Green, the Associate Chief Medical Officer of USCF Medical Center; Dr.
26  Michael Gropper, the President of Medical Staff at UCSF Medical Center, previously the
    Chairman of the Credentials Committee; Dr. Sam Hawgood, the Dean of the School of Medicine
27  at UCSF; Mr. Mark Laret, the Chief Executive Officer of the UCSF Medical Center; Dr. Sally
    Marshall, the Vice Provost of the School of Medicine at UCSF; Ms. Susan Penney, the Director of
28  Risk Management at UCSF Medical Center.  SAC ¶¶ 12-21.

1    GRANTED in part and DENIED in part.[2]  Those portions of the SAC which are dismissed are

2    DISMISSED WITH PREJUDICE.

3    **II.    LEGAL STANDARD**

4         A complaint may be dismissed for failure to state a claim for which relief can be granted

5    under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed.R.Civ.P. 12(b)(6).  "The

6    purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the

7    complaint."  *N. Star. Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  In ruling on

8    a motion to dismiss under Rule 12(b)(6), the Court takes "all allegations of material fact as true

9    and construe(s) them in the lights most favorable to the non-moving party."  *Parks Sch. of Bus. v.*

10   *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1990).  The complaint need not contain "detailed factual

11   allegations," but must allege facts sufficient to "state a claim to relief that is plausible on its face."

12   *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547

13   (2007)).

14        "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear

15   … that the complaint could not be saved by amendment."  *Eminence Capital, LLC v. Aspeon, Inc*.,

16   316 F.3d 1048, 1052 (9th Cir. 2003).  However, "[l]eave to amend need not be granted when an

17   amendment would be futile."  *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1097 (9th Cir. 2002).

18   "Five factors are frequently used to assess the propriety of a motion for leave to amend: (1) bad

19   faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5)

20   whether plaintiff has previously amended his complaint."  *Allen v. City of Beverly Hills*, 911 F.2d

21   367, 373 (9th Cir. 1990).

22   **III.   FALSE CLAIMS ACT**

23        **A.    *BACKGROUND***

24             **1.    Material Provisions of the Court's Previous Order**

25        In the previous order, the Court considered whether Plaintiff's allegations stated a claim

26   under the False Claims Act ("FCA") on the theory of implied false certification.  A false

27   _____

28        [2] The parties have consented to the jurisdiction of the undersigned magistrate judge
     pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

certification claim requires allegations that the defendant (1) made a false statement or engaged in a fraudulent course of conduct, (2) with scienter, (3) that was material such that it caused (4) the government to pay out money.  *See United States ex. rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1170 (9th Cir. 2006).  A claim based on the theory of implied false certification−as opposed to express certification−requires an allegation that the "entity has previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim." *Ebeid ex rel. United Staes v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

In the previous order, the Court held that Plaintiff's allegations in the FAC did not establish the requisite element of "materiality."  With respect to Plaintiff's allegation that Dr. Ostroff facilitated unqualified sedation nurses to perform anesthesia services, the Court held the following:

> Based on the fact that § 482.52 does not expressly condition payment upon compliance, together with the fact that other non-payment administrative means exist to ensure enforcement of Medicare's conditions of participation, the Court finds that non-compliance with 42 C.F.R. § 482.52 is not material to the government's decision to pay a claims submitted to Medicare except in one limited circumstance−if the provider bills for specific services prohibited by this section.  There is a cognizable claim under the FCA if the claim for reimbursement is for the unqualified sedation nurses to perform the anesthesia services.

*Id*. at 27.  The Court found that Plaintiff had not alleged that Dr. Ostroff submitted a claim for reimbursement for unqualified sedation nurses to perform anesthesia services, and granted Plaintiff leave to amend on this point.  *Id*.

With respect to Plaintiff's allegation that Dr. Ostroff submitted claims for reimbursement for endoscopic procedures without being present for "the entire viewing," as required by 42 C.F.R. § 415.172, the Court found that the FAC lacked allegations that Dr. Ostroff was actually not present for the entire viewing.  Rather, the Court found that "Plaintiff speculates that it would not have been possible for Dr. Ostroff to have been present given how many endoscopic procedures he scheduled simultaneously in different rooms," and that "based on Plaintiff's allegations, it is

1  possible that Dr. Ostroff was physically present for the 'entire viewing' of each endoscopic

2  procedure that was performed." *Id.* at 28.  Plaintiff was also granted leave to amend this point.  *Id.*

3  **2.      Plaintiff's New Allegations in the SAC**

4  Plaintiff asserts three claims in the SAC regarding violations of the False Claims Act.[3]

5  Count I arises under 31 U.S.C. § 3729(a)(1)(A), which prohibits the presentation of a false claim.

6  Count II arises under § 3729(a)(1)(B), which proscribes making false statements material to a false

7  or fraudulent claim.  Count III arises under § 3729(a)(1)(G), which prohibits false statements used

8  to avoid or conceal an obligation to obtain fraudulently obtained funds.

9  Plaintiff pleads new allegations in her SAC in an attempt to redress the deficiencies in the

10  FAC.  First, with respect to Plaintiff's claim regarding unqualified sedation nurses, Plaintiff does

11  not appear to assert any new allegation.  Rather, Plaintiff broadly alleges that whenever anesthesia

12  services were provided in connection with an endoscopic procedure, or any procedure for that

13  matter, Dr. Ostroff submitted a false claim by virtue of his employ of unqualified sedation nurses.

14  *See* SAC ¶¶ 65-85, 233.

15  With respect to Plaintiff's claims regarding unsupervised residents, Plaintiff alleges that

16  Dr. Ostroff was required to be present for the entire procedure, as opposed to the entire viewing,

17  when performing endoscopic procedures in which anesthesia is administered:

18  > Because Dr. Ostroff opted to direct the anesthesia services in deep
19  > sedation cases he was required to be present for the entire
   > endoscopic procedure, from the initial sedation of the patient until
20  > the post-anesthesia evaluation and transfer of the patient to recovery
   > from the deep sedation.  42 C.F.R. § 482.52(a)(3).  Dr. Ostroff was
21  > taking responsibility for administering or directing the deep sedation
   > under 42 C.F.R. § 482.52(a)(3); 42 C.F.R. § 414.46(a)(2), (c), or
22  > (d)(1); 42 C.F.R. § 415.110(a) and (b).  Therefore, Dr. Ostroff was
   > not permitted to leave after the entire endoscopic "viewing" as
23  > permitted in 42 C.F.R. §415.172(a)(1)(ii) in deep sedation cases
   > because he was required to fulfill his obligations to ensure the deep
24  > sedation was performed by qualified persons.
25

26  SAC ¶ 89.  Plaintiff alleges that "when the extra duties of performing or directing deep sedation is

27

28  ———————————

[3] Unlike the FAC, the SAC does not include a claim under California Insurance Code § 1871.1(b) regarding the alleged presentation of false claims to private insurance companies.

*United States District Court*
*Northern District of California*

factored in, the amount of time that Dr. Ostroff was required to be present was considerably longer than the 'entire viewing,' because he was required to be present for the 'entire procedure,' including those additional portions of the procedure that related to deep sedation, and post-anesthesia evaluation." SAC ¶ 90.  Plaintiff further alleges:

> Because the anesthesia during these procedures is administered by a sedation nurse, Dr. Ostroff must personally perform a "pre-anesthetic examination and evaluation" on each patient, as well as prescribe the anesthesia plan, participate "in the most demanding aspects of the anesthesia plan including, if applicable, induction and emergence," and provide any necessary post-anesthesia care.  42 C.F.R. § 415.110(a).  Also see, 42 C.F.R. § 482.52(a)(3); 42 C.F.R. § 414.46(a)(2), (c), or (d)(1); 42 C.F.R. § 415.110(a) and (b).  He must also personally document that he performed each of these tasks.  42 C.F.R. § 415.110(b).

SAC ¶ 100.

### 3.      Defendants' Motion to Dismiss

Defendants argue that Plaintiff's allegations do not state a claim under the FCA.  *See* Dkt. No. 44 (Defendants' Rule 12(b)(6) Motion to Dismiss Second Amended Complaint) ("Def.'s Motion").  To the extent Plaintiff's FCA claim is based on the use of unqualified sedation nurses, Defendants argue the SAC fails to plead the "one limited circumstance" in which Dr. Ostroff's use of unqualified sedation nurses would be material to the government's decision to pay out the claim—when the "claim for reimbursement is for the unqualified sedation nurses to perform the anesthesia services."  *See id.* at 3; Order Dismissing FAC at 27.  Defendants contend that Plaintiff does not allege that claims for anesthesia services were ever submitted to the government, and that the SAC conflates billing for anesthesia services with billing for endoscopic procedures.  Defendants contend that anesthesia services and endoscopic procedures are billed separately, and points to a regulation that provides that "CMS *allows separate payment* under the fee schedule for certain reasonable and medically necessary medical or surgical services *furnished by a physician while furnishing anesthesia services* to the patient."   Def.'s Motion at 6-7 (quoting 42 C.F.R. 414.46(g)(1) (emphasis added)).

With respect to Plaintiff's claim regarding unsupervised residents performing endoscopic

United States District Court
Northern District of California

procedures, Defendants contend Plaintiff did not address the defects identified by the Court

because he failed to plead facts that show Dr. Ostroff could not have been present for the "entire

viewing." Def. Motion at 9-10 (citing 42 C.F.R. § 415.172). Defendants argue that Plaintiff

alleges an unsupported legal conclusion that Dr. Ostroff had to be present for the entire procedure.

Def.'s Motion at 9 (citing SAC ¶ 52 ("in cases where, as here, the teaching physician is directing

or assuming responsibility for deep sedation the teaching physician must be present *for the entire*

*procedure*, not just the entire viewing.") (emphasis added)). Defendants contend that Plaintiff's

argument fails because there is no allegation that Dr. Ostoff was supervising anesthetic services, as

opposed to endoscopic procedures. Therefore, Defendants argue that whether or not Dr. Ostroff

adequately handled patient sedation is "legally irrelevant" to whether he was supervising the

resident performing endoscopic procedures. Def.'s Motion at 9.

Defendants also argue that Plaintiff fails to plead with particularity the claim regarding

unsupervised residents. *Id*. at 11-12. For instance, Defendants argue that Plaintiff fails to allege

that Dr. Ostroff billed Medicare for the services by residents he allegedly did not adequately

supervise because Plaintiff does not allege that his two particular examples of patients were

Medicare patients. *Id*. at 11 (citing SAC ¶¶ 97, 202). Moreover, Defendants argue that the fact a

patient was scheduled at a certain time does not mean the procedures were actually performed at

that time. Defendants argue that it is common for doctors to require patients wait beyond their

scheduled appointment times, and sometimes, patients are late. Defendants note that the

scheduled procedures in the SAC are all early in the day, thus spillover to later times is plausible.

Defendants argue that FCA claims are not actionable if there are "obvious alternative

explanations" to conduct that is allegedly fraudulent. Def. Motion at 9 (citing *Cafasso, U.S. ex*

*rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1056 (9th Cir. 2011)).

### 4.    Plaintiff's Opposition

Plaintiff opposes Defendants' Motion and contends that he sufficiently states a claim under

the FCA. Dkt. No. 48 (Plaintiff's Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss

Second Amended Complaint) ("Pl. Opp."). With respect to the sedation nurses, Plaintiff argues

the SAC alleges that Dr. Ostroff submitted claims for anesthesia services performed by

United States District Court
Northern District of California

unqualified sedation nurses.  Plaintiff also contends that Defendants are incorrect to argue that the

SAC lacks such allegations for two reasons.  First, Plaintiff argues that the SAC sufficiently

alleges that a fee for some level of anesthesia services, and in particular, moderate sedation, is

*directly bundled* with the fee for endoscopic procedure.  Pl. Opp. at 2, 15.  Second, Plaintiff argues

that the SAC sufficiently alleges that Dr. Ostroff's conduct caused *additional false claims* to be

submitted when anesthesia services were ordered beyond the level of sedation that was part of the

bundled service charge.  Pl. Opp. at 2.

With respect to the claim regarding unsupervised residents performing endoscopic

procedures, Plaintiff contends the SAC sufficiently pleads facts to show that Dr. Ostroff could not

have overseen to completion all the endoscopic procedures he performed where there were also

sedation services.  Plaintiff contends that Dr. Ostroff was required to be present until the

completion of all required anesthesia-related portions of the procedure, including post-procedure

recovery from sedation, but was not present during this time.  Pl. Opp. at 3 (citing SAC ¶¶ 91,

104).

### 5.    Defendants' Reply

First, with respect to Plaintiff's argument that the bill for anesthesia services are bundled

together, Defendants argue that this is only the case with moderate sedation, not deep sedation.

Dkt. No. 49 (Defendant's Reply in Support of its Motion to Dismiss Second Amended Complaint

for Failure to State a Claim under Rule 12(b)(6)) ("Def.'s Reply") at 4.  Because Plaintiff did not

allege that Dr. Ostroff made any false certifications with respect to compliance with the

regulations governing *moderate sedation*, Defendants contend that Plaintiff's "bundle" theory

fails.  Defendants contend Plaintiff's bundle theory also fails because moderate sedation, as

opposed to deep sedation, is not defined as "anesthesia," and therefore, not regulated by §

482.52(a).  *See id.*; Def.'s Reply at 5.

On this point, the United States filed a statement expressing their position.  *See* Dkt. No.

52 (United States' Position Statement Regarding Medicare and Medicaid Coverage of Sedation

and Anesthesia Services).  The United States submitted a statement from the Center for Medicare

and Medicaid Services ("CMS"), the component of the U.S. Department of Health and Human

1   Services ("HHS") that administers Medicare and Medicaid, which shows that moderate sedation is

2   *not* considered anesthesia, and therefore, is not regulated by § 482.52(a).  *See* CMS Manual

3   System Pub. 100-07 State Operations Provider Certification, Transmittal 74 (Dec. 2, 2011) ("CMS

4   Pub 100-07"),[4] at 2 ("CMS, consistent with the [American Society of Anesthesiologists], does not

5   define moderate or conscious sedation as anesthesia."); at 4 ("the anesthesia services [condition of

6   participation] establishes certain requirements *that apply only* when anesthesia is administered")

7   (emphasis added).

8         With respect to the unsupervised residents, Defendants argue that Plaintiff's legal

9   conclusion that Dr. Ostroff was required to be present for the "entire procedure" does not

10  overcome the law's requirement that Dr. Ostroff needed to be present only during the "entire

11  viewing."  Def.'s Reply at 2, 8-9.

12        **B.     *DISCUSSION***

13              **1.     Unqualified Sedation Nurses**

14        The SAC fails to state a claim under the FCA regarding unqualified sedation nurses

15  performing anesthesia during Dr. Ostroff's endoscopic procedures.  In the previous order, the

16  Court articulated the "one limited circumstance" in which Plaintiff's allegations regarding

17  sedation nurses would present a cognizable claim under the FCA—"if the claim for reimbursement

18  is for the unqualified sedation nurses to perform the anesthesia services."  Order Dismissing FAC

19  at 27.  Nevertheless, the allegations in the SAC are identical to the allegations in the FAC, with the

20  exception of more redundancy.  In granting Plaintiff leave to amend, the Court did not ask

21  Plaintiff to re-plead his initial theory of the case in hopes that the Court would reconsider its

22  previous holding, yet to a large extent that is exactly what Plaintiff did.

23        At no point in the seventy-page SAC does Plaintiff allege that Dr. Ostroff submitted a

24  claim *for anesthesia services*.  Rather, Plaintiff alleges that Dr. Ostroff submitted claims for

25

26              [4] *Available at* http://www.cms.gov/Regulations-and-
    Guidance/Guidance/Transmittals/Downloads/R74SOMA.pdf.  The Court takes judicial notice of
27  publically filed documents.  *See* Fed.R.Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 689
    (9th Cir. 2001) ("Under Fed.R.Evid. 201, a court may take judicial notice of matters of public
28  record.") (quotations omitted).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    reimbursement for endoscopic procedures, or "for any procedure," where anesthesia services were

2    provided.  *See* SAC ¶ 233.  By way of example, Plaintiff alleges that Dr. Ostroff submitted claims

3    for endoscopic procedures "*where* the patient was placed under deep sedation by unqualified

4    sedation nurses."  *See, e.g.*, SAC ¶ 78 (emphasis added); *see also e.g.*, SAC ¶ 81 ("Dr. Ostroff

5    knew the claims submitted to Medicare/MediCal *in which* deep sedation was administered to his

6    patients by unqualified sedation nurses would result in the payment of claims that

7    Medicare/Medicare deemed improper.") (emphasis added); SAC ¶ 83 ("Dr. Ostroff's actions

8    directly caused false claims to be presented to Medicare, Medi-Cal, or any other government

9    insurance program for procedures *involving* monitored anesthesia care performed by an

10   unsupervised nurse.") (emphasis added).  These allegations are no different than the allegations in

11   the FAC.  *See* FAC ¶ 110 ("Dr. Ostroff and others presented, or caused others to present, false

12   claims … for procedures *involving* deep sedation administered by unsupervised sedation nurses.")

13   (emphasis added).  In the previous order, the Court explained in detail why such allegations fail to

14   meet the materiality element of the FCA claim.  *See* Dkt. No. 40 at 24-27.  The Court declines to

15   repeat its reasoning here.

16         Plaintiff argues that the allegations in the SAC are broad enough to encompass anesthesia

17   services.  *See* Pl. Opp. at 11 ("At no point does the complaint limit specificity to endoscopic

18   procedures and is instead broad enough to include all sedation/anesthesia claims tied to the various

19   endoscopic procedures identified in the complaint.").  In light of the requirement that Plaintiff

20   plead his FCA claim with particularity under Rule 9(b) of the Federal Rules of Civil Procedure,

21   this argument is without merit.  *See Ebeid*, 616 F.3d at 998.  At no point does Plaintiff specifically

22   allege that Dr. Ostroff submitted a claim for reimbursement for anesthesia services.

23         In the Opposition, Plaintiff argues two reasons why the SAC alleges Dr. Ostoff submitted a

24   claim for reimbursement for anesthesia services.  First, Plaintiff argues that a fee for some level of

25   anesthesia services is *directly bundled* with the fee for endoscopic procedure.  Second, Plaintiff

26   argues that Dr. Ostroff's conduct caused *additional false claims* to be submitted when anesthesia

27   services were ordered beyond the level of sedation that was part of the bundled service charge.

28   The SAC, however, contains no such allegations.  Plaintiff never alleges that the fee for anesthesia

services is bundled with the fee for endoscopic procedures, or that Dr. Ostroff ever made additional claims for reimbursement specifically for anesthesia services beyond that which is in the bundled service charge.  An argument in the Opposition is insufficient.

Even if Plaintiff's "bundling" and "additional false claims" arguments were asserted as allegations in the SAC, he would still fail to state a claim under the FCA.  Claims under the FCA must be pled with particularity under Rule 9(b)'s standards.  *See Ebeid*, 616 F.3d at 998-99.  "Rule 9(b) requires a party to 'state with particularity the circumstances constituting fraud or mistake,' including 'the who, what, when, where, and how of the misconduct charged.' *Ebeid*, 616 F.3d at 998 *(citing Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003)).  For an FCA claim, a plaintiff must "allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid*, 616 F.3d at 998.  Plaintiff, however, has not provided any details of a scheme showing that Dr. Ostroff submitted a fee for anesthesia services provided by unqualified nurses, and has not cited any authority to show that this is even possible.

As a preliminary matter, Plaintiff's representations of the statements from the Center for Medicaid and Medicare Services ("CMS") contradict the CMS statements.  For instance, Plaintiff writes in his Opposition Brief:

> Prior to 2006 anesthesia services had to be separately billed, as the fee for the anesthesia service accompanying the endoscopic procedure was not included in the billing code for the endoscopic procedure.  However, this changed in 2006 when Medicare implemented a global fee approach that bundled the anesthesia services fee with the endoscopic fee into a single billing code.

Pl. Opp. at 2 (citing Pl. Opp., Ex. 1, CMS Manual System Pub. 100-04 Medicare Claims Processing, Transmittal 1324, at 2 (Aug. 27, 2007) ("CMS Pub. 100-04")).[5]  However, CMS Pub. 100-04 does not indicate, as Plaintiff represents, that anesthesia services were billed separately until 2006, when they began to be bundled.  Rather, CMS Pub. 100-04 makes a small revision to an *existing* policy for "conscious" or "moderate" sedation codes which "instructed the carriers not

---

[5] *Available at* http://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R1324CP.PDF.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    to allow separate payment for the anesthesia service performed by the physician who also

2    furnishes the medical or surgical services." *Id.* at 2 ("carriers may not allow separate payment for

3    the surgeon's performance of local or surgical anesthesia if the surgeon also performs surgical

4    procedures").  CMS Pub. 100-04 creates an exception to this rule: when a procedure is not

5    included in Appendix G of CMS Pub. 100-04, certain billing codes for moderate sedation, 99143

6    to 99145, may be used to separately bill for the anesthesia service.

7         In any event, CMS Pub. 100-04 provides that there may be no separate billing for an

8    anesthesia service administered for procedures listed in Appendix G–the bill for the anesthesia

9    service must be bundled with the bill for the procedure.  Plaintiff points out that the billing codes

10   for the endoscopic procedures performed by Dr. Ostroff, 43260 (ERCP), 43200 (EGD), and 44397

11   (colonoscopy with stent), are all included in Appendix G of CMS Pub. 100-04, and argues that

12   therefore, the fee for the anesthesia service is bundled into the bill for the endoscopic procedures.

13   *See id.*; *see also* SAC ¶ 139 (listing the billing codes for endoscopic procedures).  However,

14   Appendix G of CMS Pub. 100-04 only provides a "Summary of CPT Codes That Include

15   *Moderate (Conscious)* Sedation," and does not, in any way, indicate that a fee for "deep sedation"

16   is bundled as well.  CMS Pub. 100-04 at 2 (emphasis added).

17        Plaintiff's SAC does not allege that Dr. Ostroff violated § 482.52 by using unqualified

18   sedation nurses to perform "moderate sedation."  Instead, the SAC repeatedly alleges that Dr.

19   Ostroff violated regulations regarding "deep sedation."  *See, e.g.*, SAC ¶¶ 65, 68-69, 70-81.

20   However, even if Plaintiff had alleged that the unqualified nurses administered moderate sedation,

21   Plaintiff's claim would still fail because moderate sedation is not defined as "anesthesia."  *See*

22   CMS Manual System Pub. 100-07 State Operations Provider Certification, Transmittal 74 (Dec. 2,

23   2011) ("CMS Pub 100-07") at 2 ("CMS, consistent with the [American Society of

24   Anesthesiologists], does not define moderate or conscious sedation as anesthesia.").[6]

25        Plaintiff is incorrect to assume that the list of persons qualified to perform "anesthesia"

26   also applies to "anesthesia services" such as moderate sedation.  Section 482.52 provides a list of

27

28        [6] *Available at* http://wwww.cms.gov/Regulations-and-
Guidance/Guidance/Transmittals/Downloads/R74SOMA.pdf

11

United States District Court
Northern District of California

persons qualified to perform "anesthesia."  42 C.F.R. § 482.52 ("*Anesthesia* must be administered only by….") (emphasis added).  Because moderate sedation is not defined as "anesthesia," § 482.52's list of persons qualified to perform "anesthesia" does not apply to moderate sedation.  *See* CMS Pub 100-07 at 4 ("the anesthesia services [condition of participation] establishes certain requirements *that apply only* when anesthesia is administered") (emphasis added).

The CMS guidelines cited by Plaintiff say nothing about "deep sedation."  Plaintiff has not cited any CMS guideline that is comparable to CMS Pub. 100-04, which only applies to moderate sedation.  Moreover, Plaintiff does not plead, and does not argue, that claims for deep sedation are "bundled" into the fee for an endoscopic procedure.  Indeed, Plaintiff admits in his Opposition Brief that deep sedation may be billed separately.  *See* Pl. Opp. at 15-16 ("*Deep sedation* can indeed be billed to Medicare, Medicaid and other providers under a code separate from that for an endoscopic procedure.  However, billing for an ERCP, EGD and a colonoscopy with stent specifically includes a charge for *moderate sedation* under the Medicare Processing Claims Manual.") (emphasis added).  If deep sedation is billed separately, then Plaintiff fails to state a claim for the reasons discussed above−Plaintiff never alleges that Dr. Ostroff submitted a separate claim for anesthesia.

In sum, Plaintiff failed to allege the one limited circumstance recognized by this Court which would state a claim under the FCA regarding the use of unqualified sedation nurses to perform deep sedation−that Dr. Ostroff submitted claims for anesthesia administered by unqualified sedation nurses.  *See* Order Dismissing FAC at 27.  Plaintiff had been informed by the Court what was necessary to amend his claim, and failed to amend accordingly.  Therefore, to the extent Plaintiff's FCA claims are based on Dr. Ostroff's use of unqualified sedation nurses performing anesthesia services, the claims are dismissed with prejudice.

### 2.     Unsupervised Resident Physicians

In the previous order, the Court held that there was no viable claim in the FAC based on Plaintiff's speculation that Dr. Ostroff could not have been present for the "entire viewing" of the endoscopic procedure.  Order Dismissing FAC at 28; 42 C.F.R. § 415.172(a)(1)(ii).  According to Plaintiff, Dr. Ostroff would schedule up to five endoscopic procedures at a time.  Also according

United States District Court
Northern District of California

1    to Plaintiff, the minimum viewing time for an EGD is five minutes, and the minimum viewing

2    time for an ERCP or colonoscopy is fifteen minutes.  *See* FAC ¶¶ 116.  Plaintiff alleged that given

3    the time required for preparation, washing hands, and traveling between rooms, Dr. Ostroff could

4    not possibly have been present for the "entire viewing."  The Court dismissed these allegations as

5    speculative.

6         In the SAC, Plaintiff takes a different approach.[7]  Instead of alleging that Dr. Ostroff could

7    not have been present for the entire viewing of all the endoscopic procedures he performed,

8    Plaintiff argues that Dr. Ostroff was required to be there for the *entire procedure*.  *See* SAC ¶ 86-

9    104.  Plaintiff explains that "[b]ecause Dr. Ostroff opted to direct the anesthesia services in deep

10   sedation cases[,] he was required to be present for the entire endoscopic procedure, from the initial

11   sedation of the patient until the post-anesthesia evaluation and transfer of the patient to recovery

12   from the deep sedation."  SAC ¶ 89.  This allegation is premised on Dr. Ostroff having additional

13   responsibilities when patients are under deep sedation.  *See* SAC ¶ 90 (alleging that "when the

14   extra duties of performing or directing deep sedation is factored in … Dr. Ostroff was required to

15   be present … for the 'entire procedure.'").

16        The problem with Plaintiff's new allegations is that they constitute a legal conclusion, and

17   there is no legal support for this conclusion.  In the SAC and Opposition, Plaintiff cites to various

18   regulations purportedly in support of this rule.  Not one of these regulations, however, requires a

19   physician performing endoscopic procedures to be present from the start to end of the sedation

20   process in order to be reimbursed for the endoscopic procedure, as Plaintiff contends.  *See* SAC ¶

21   89 (citing 42 C.F.R. § 482.52(a)(3); *Id*. § 414.46(a)(2), (c), or (d)(1); *Id*. § 415.110(a) and (b));

22   SAC ¶ 94 (also citing 42 C.F.R. § 415.172(a)); Pl. Opp. at 9 (citing 42 C.F.R. § 414.46(a)(3)).  For

23   instance, § 414.46(a)(3) defines "anesthesia time," *see id*., but does not state or imply that to be

24   reimbursed for endoscopic procedures, "Dr. Ostroff would have had to be present from the time

25   patients began preparation for deep sedation until they could be placed in postoperative care," Pl.

26

27   _____

28        [7] In light of the fact Plaintiff no longer contends that Dr. Ostroff was not present for the
     entire viewing, *see* SAC ¶ 86-104, the Court need not address Defendants' arguments regarding
     the "other alternative explanations" for why Dr. Ostroff scheduled simultaneous endoscopic
     procedures.  *Cafasso*, 637 F.3d at 1056.

1    Opp. at 17.  In effect, Plaintiff asks the Court to impose a new requirement on physicians

2    submitting claims for endoscopic procedures that is not contemplated in regulations.

3            Plaintiff's unsupported legal conclusion is contrary to § 415.172(a)(1)(ii), which explicitly

4    states that "[i]n the case of procedures performed through an endoscope, the teaching physician

5    must be present during the entire viewing."  *See id.*  Plaintiff ignores subdivision (ii) of §

6    415.172(a)(1), and argues that Dr. Ostroff must have been present during "all critical portions of

7    the procedure."  SAC ¶ 87 (quoting § 415.172(a)(1)).  It is clear from the language of the

8    regulation, however, that subdivision (ii) of § 415.172(a)(1) defines the "critical portions" of a

9    procedure involving an endoscope as the "entire viewing."  *Id.* § 415.172(a)(1)(ii).

10           Moreover, Plaintiff's argument that Dr. Ostroff needed to supervise the entire sedation

11   process is essentially a rehash of the argument that Dr. Ostroff submitted a false claim because he

12   used unqualified sedation nurses, and fails for the same reasons discussed above.  In the previous

13   order, the Court explained why Dr. Ostroff's inadequate supervision of resident physicians

14   performing endoscopic procedures would be material to the government's decision to pay a claim

15   for the endoscopic procedure, while the employ of unqualified sedation nurses would not.  *See*

16   Order Dismissing FAC at 27.  The requirement that a physician be present for the entire viewing is

17   a condition of payment.  *See* 42 C.F.R. § 415.172(a) (the "physician fee schedule payment is made

18   *only if* a teaching physician is present during the key portion of any service or procedure for which

19   payment is sought.") (emphasis added).  The Ninth Circuit has held that a condition of payment is

20   material to the government's decision to pay out a claim.  *See Ebeid*, 616 F.3d at 1000-01.  The

21   Ninth Circuit has not held, however, that conditions of participation, which includes regulations

22   governing persons qualified to provide anesthesia services, as well as the *supervision* of such

23   persons, *see* § 482.52, is material to the government's decision to pay out a claim.  *See Ebeid*, 616

24   F.3d at 998 n. 3.

25           Finally, the allegations fail for an additional reason—Plaintiff has not alleged that Dr.

26   Ostroff sought reimbursement from Medicare for services in which he allegedly was inadequately

27   supervising physician residents (or sedation nurses).  In the SAC, Plaintiff provides two examples

28   of Dr. Ostroff's schedule—on May 3, 2002 and January 13, 2006—to allege that Dr. Ostroff

United States District Court
Northern District of California

14

scheduled a number of endoscopic procedures that allegedly could not have been completed in accordance with the applicable regulations.  Plaintiff does not allege, however, that the scheduled procedures were for Medicare patients.  In his Opposition, Plaintiff argues that some of these patients were likely Medicare patients.  This is insufficient.

To the extent Plaintiff's FCA claims are based on unsupervised physician residents, they are dismissed.  In light of the fact Plaintiff's SAC embodies a legal theory that is contrary to specific regulations for proper supervision of residents performing endoscopic procedures, and the fact Plaintiff has already been granted leave to amend, these claims are dismissed with prejudice.  Accordingly, Plaintiff's claims I, II, and II for violation of the FCA are dismissed with prejudice.

## IV.    FIRST AMENDMENT RETALIATION

### A.    *BACKGROUND*

#### 1.    Material Provisions of the Court's Previous Order

In the previous order, the Court considered whether Plaintiff sufficiently stated a claim for retaliation in violation of his First Amendment rights.  The Court dismissed the claim with leave to amend, in part based on the finding that Plaintiff did not sufficiently plead that each of the Defendants named in his FAC "participated in some meaningful way" in the retaliation.  *Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004).  Rather, the Court found:

> Although Plaintiff pleads facts to suggest the level by which some Defendants were involved in the alleged retaliation, for the majority of Defendants, Plaintiff asserts liability based on the conclusory allegation that they were 'involved' in one or more of the three main adverse employment decisions.

Order Dismissing FAC at 39 (citing FAC ¶¶ 210, 217, 220).  The Court held this to be "insufficient," and granted Plaintiff leave to amend.  *Id.*

#### 2.    Defendants' Motion to Dismiss

Defendants argue that Plaintiff's allegations in the SAC still fail to state a claim under § 1983 claim for retaliation in violation of Plaintiff's First Amendment rights.  While Defendants no longer argue that Plaintiff's speech was within the scope of his job, Defendants still argue that Plaintiff fails to plead how each of the individual Defendants was an "integral participant" in the alleged retaliation.  Defendants also contend that Plaintiff fails to plead that each individual

United States District Court
Northern District of California

15

United States District Court
Northern District of California

1  Defendant was "aware" of Plaintiff's protected speech.  Defendants argue that Plaintiff's SAC

2  lumps together all Defendants and alleges that "Defendants" undertook retaliatory acts by

3  "attending meetings" and having "discussed the decision to limit Plaintiff's employment

4  opportunities."  Def. Motion at 12 (citing SAC ¶ 221).  Additionally, Defendants contend that

5  Plaintiff does not allege that Defendants Ascher, Desmond-Hellman, Green, Gropper and Marshall

6  knew about Plaintiff's protected speech other than through the Risk Management Report, which

7  only claimed that Plaintiff breached confidentiality through his communications with unauthorized

8  third parties.  Defendants argue that without establishing this knowledge, there can be no

9  retaliatory intent as a matter of law.

10             **3.       Plaintiff's Opposition**

11        Plaintiff argues that he states a claim under § 1983 claim for retaliation in violation of his

12  First Amendment rights.  Plaintiff contends that the SAC contains additional details as to the

13  integral participation of each Defendant, and sufficiently alleges that each Defendant was aware of

14  Plaintiff's role as a witness and Plaintiff's views on the cause of Patient Doe's death.  Pl. Opp. at 5

15  (citing SAC ¶¶ 179-215).  Plaintiff notes that the SAC alleges that the Risk Management Report

16  was given to each Defendant, which was relied upon when Defendants came to their collective

17  decision to deny tenure to Plaintiff and take other alleged adverse actions against him.  Pl. Opp. at

18  5 (citing SAC ¶ 193).

19        **B.      *DISCUSSION***

20             **1.       Individual Defendants' Awareness of the Protected Speech**

21        In the previous order, the Court held that Plaintiff sufficiently pled the third element of a

22  prima facie case for First Amendment retaliation—that Plaintiff's speech was a substantial or

23  motivating factor of the adverse employment actions.  Order Dismissing FAC at 35.  The Court

24  noted that "Plaintiff allege[d] that the named defendants were aware of Plaintiff's protected

25  speech."  *Id*. at 36.  This finding was in response to Defendants' argument that Plaintiff had not

26  sufficiently alleged each Defendant's awareness in the FAC.  Despite this Court's previous

27  holding, Defendants argue that the SAC insufficiently pleads that Defendants Ascher, Desmond-

28  Helllman, Green, Grooper, and Marshall were aware of Plaintiff's protected speech.  Defendants

1    are incorrect.

2         Plaintiff alleges that in "the course of the case brought by the family of Patient Doe" all

3    nine individual defendants "became aware that Plaintiff-realtor would testify in that matter adverse

4    to the individual defendants …, and adverse to the named defendants in the case brought by the

5    family of Patient Doe."  SAC ¶ 166.  Plaintiff also alleges that "[a]t or about the time of Dr. Maa's

6    deposition, UCSF, the UCSF Medical Center, through their attorneys, and the named Defendants,

7    were aware of Dr. Maa's expected testimony in the Patient Doe lawsuit deposition, and they

8    became aware that Dr. Maa had retained his own private attorney to represent him."  SAC ¶ 189.

9         Moreover, Plaintiff also pleads circumstances which make his allegation of awareness

10   plausible.  Plaintiff alleges that a Risk Management Report, "which contained several factual

11   inaccuracies and contradictions, inaccurately summarized the events leading up to the death of

12   Patient Doe[,] and … wrongfully accused Dr. Maa of participating in several unprotected

13   conversations with various providers," was placed in his file and made available to "all defendants

14   who were members of the Credentials Committee or otherwise participated in the decision

15   whether to renew Plaintiff's credentials, appointments or requests for promotion."  SAC ¶¶ 192-

16   93.  Plaintiff also alleges that Defendants relied on the Risk Management Report and Dr. Maa's

17   protected activity when making its decisions to effect adverse employment actions.  *Id.* ¶ 193.

18        Defendants contend the foregoing allegations are insufficient, but the law does not require

19   more.  In *Alpha Energy Savers, Inc. v. Hansen*, the Ninth Circuit considered what evidence was

20   sufficient of a defendant's awareness in a First Amendment retaliation claim for a plaintiff to

21   survive the defendant's motion for summary judgment.  381 F.3d 917, 920-21 (9th Cir. 2004).

22   The plaintiff had engaged in protective activity by testifying in a co-worker's grievance hearing

23   against the county defendant.  In response to the defendant's argument that the plaintiff lacked

24   evidence of the defendants' knowledge because the defendants had not witnessed the plaintiff's

25   testimony, the court held it sufficient that the defendants knew the plaintiff was going to testify

26   against the county's interest.  *Id.* at 928 ("Their knowledge of the precise details of his testimony

27   is less crucial than their awareness that he assisted a former County employee who was publicly

28   accusing them of racial and age discrimination.").  In this case, Plaintiff sufficiently alleges facts

United States District Court
Northern District of California

17

1  which show that Defendants were aware that Plaintiff would have testified adversely to its interest,

2  causing the UCSF Medical Center to settle the lawsuit.

3          Defendants do not attempt to distinguish *Alpha Energy*.  The only Ninth Circuit case cited

4  by Defendants is *Raad v. Fairbanks N. Star Borough Sch. Dist.*, which is distinguishable on its

5  facts. 323 F.3d 1185, 1197-98 (9th Cir. 2003).  In *Raad*, the plaintiff alleged retaliation by two

6  principals who had denied her employment at two different schools on the basis that she had filed

7  a discrimination complaint at a third school.  *Id.* at 1197-98.  Finding that the plaintiff presented

8  "no evidence" that the two principals were aware of her protected activity, the court wrote that

9  "[i]mputing knowledge of [the plaintiff's] protected activity to the principals in this context would

10  be just as inappropriate as imputing knowledge of the race of an applicant in a disparate treatment

11  case when there is no evidence that the employer knew the applicant's race."  *Id.* at 1198.

12          Notably, both *Raad* and *Alpha Energy* were decided upon review of the district court's

13  grant of summary judgment.  Consequently, the plaintiffs had the opportunity to seek discovery

14  and the court had the opportunity to consider evidence.  The same is true for *CarePartners LLC v.*

15  *Pat Lashway*, No. 05-1104, 2010 WL 1141450 (W.D. Wash. Mar. 22, 2010), another case cited by

16  Defendants where the district court granted summary judgment to the defendants upon finding no

17  knowledge of the plaintiff's protected activity.  *See id.* at *9.  In *CarePartners*, the court even

18  cited evidence showing that at least some of the defendants likely did not know about the

19  protected activity before engaging in the adverse employment actions.  *Id.* at n. 6. The procedural

20  posture of this case must distinguish it from the rest, because on a motion to dismiss, Plaintiff is

21  only required to plead a short and plain statement showing a plausible basis for relief.

22          While Defendants also cite cases in which a district court granted a motion to dismiss in

23  part because there was no allegation that the defendants were aware of protected speech, these

24  cases must also be distinguished on the face of the allegations.  Unlike Plaintiff in this case, the

25  plaintiffs in the cases cited by Defendants did not allege that the defendants were aware of the

26  protected activity.  In *Cooper v. Cate*, the court granted the defendant's motion to dismiss a First

27  Amendment retaliation claim in a second amended complaint with prejudice for two reasons—

28  first, because of the plaintiff's failure to adequately identify her protected activity, and, "[a]s a

United States District Court
Northern District of California

18

consequence," the plaintiff's failure to allege that "the individual Defendants even had knowledge of [the plaintiff's] protected speech." 2011 WL 5554321 at *7 (E.D. Cal. Nov. 15, 2011); *see also Ager v. Hedgpeth*, No. 11-6642, 2012 WL 3686079, at *4-5 (N.D. Cal. Aug. 24, 2012) (dismissing claim with leave to amend because the plaintiff did not allege knowledge or facts showing the defendants knew about the protected speech); *Warwick v. Univ. of Pacific*, No. 08-3904, 2008 WL 5000218, at *5 (N.D. Cal. Nov. 21, 2008) (same). The plaintiffs in these cases simply had not alleged awareness of the protected activity, much less alleged circumstances that permitted a plausible inference that the Defendants were aware.

Finally, the Court rejects Defendants' argument that Defendants Ascher, Desmond-Helllman, Green, Grooper, and Marshall were not aware that Plaintiff engaged in protected speech because, according to Plaintiff's allegations, they only learned of Plaintiff's protected speech through the Risk Management Report, which merely accused Plaintiff of participating in conversations with unauthorized third parties about the cause of Patient Doe's death. Defendants mischaracterize Plaintiff's allegations regarding the Risk Management Report. In addition to alleging awareness, Plaintiff alleges that these Defendants, who were all on the Credentials Committee, were made aware that the accusations in the Report were false and retaliatory. *See* SAC ¶ 195.

### 2.      Integral Participation in the Alleged Retaliation

Defendants argue that Plaintiff fails to state sufficient individualized facts to show that each named Defendant was an integral participant in the alleged retaliation. The Court disagrees. In the previous order, the Court granted Plaintiff leave to amend this point, and the SAC contains more detailed allegations than does the FAC.

Moreover, Defendants overstate the case law. "Liability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (affirming the district court's grant of summary judgment in favor of two individual defendants sued under § 1983, and reversing as to one other defendant, based on the extent to which each defendant was involved). However, "integral participation does not require that each officer's actions themselves rise to the level of a constitutional violation." *Boyd, v.*

*Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004) (citing cases from the Fifth Circuit where integral participation was found in an officer who provided armed backup to an unconstitutional search, and an officer who stood armed at the door while other officers conducted an unlawful search). Rather, liability cannot attach to "a mere bystander" who had "no role in the unlawful conduct." *Chuman v. Wright*, 76 F.3d 292, 294-94 (9th Cir. 1996) (district court erred by instructing the jury that individual liability could be found by the deprivation of rights resulting from a "team effort").

While an individual's nonvoting membership on a committee that makes a decision to deprive another of his constitutional rights is insufficient for integral participation, voting membership is sufficient. *Chudacoff v. Univ. Medical Center of Southern Nevada*, 649 F.3d 1143, 1141, 1151 (9th Cir. 2011). In *Chudacoff*, the Ninth Circuit, upon finding that all individual defendants were "state actors" who could be liable under § 1983, reversed a district court's grant of summary judgment in favor of defendants who were voting members of a committee that had deprived the plaintiff of his constitutional rights. *Id*. at 1148. The court also affirmed summary judgment in favor of the one nonvoting member of the committee, even though she too was a "state actor," because "[i]n the absence of evidence of her personal participation in the constitutional deprivation, [the defendant]'s mere non-voting membership in the [committee] is insufficient to show that she was an 'integral participant' in the deprivation of Chudacoff's rights, as is required to establish § 1983 liability." *Id*. at 1151 (citing *Chuman*, 76 F.3d at 294-95; *Taylor*, 880 F.2d 1045). The Ninth Circuit's holding in *Chudacoff* draws a distinction between voting and non-voting members on a committee−only the former is an integral participant in the decision voted upon. *See id.*

Plaintiff sufficiently alleges that each individual Defendant participated in one or more committees which rendered an adverse employment decision upon receiving information regarding Plaintiff's protected speech. *See* SAC ¶¶ 193-96. For example, Plaintiff alleges:

> The following Defendants were part of either the Credentials Committee meeting of December 14, 2010, or the Executive Medical Board ("EMB") and Governing Body meeting of December 22, 2010, which met and determined not to remove the July 2010 Risk Management Report from Dr. Maa's file: Dr. Adler, Dr. Adrienne Green, Susan Penny, Dr. Nancy Ascher, Dr. Susan

United States District Court
Northern District of California

1
2
3

> Desmond-Hellman, Dr. Sam Hawgood, Dr. Michael Gropper, Dr.
> Mark Laret, and Dr. Sally Marshall.  Instead, these Defendants met
> and decided to deny Plaintiff's application for the standard two year
> reappointment and appointed him for only a single year.

SAC ¶ 196.  While Plaintiff does not specify whether or not each individual Defendant was a

voting or nonvoting member on the committee, there is no way for him to know these details

without further discovery.  *Chudacoff*, which the Ninth Circuit decided after the district court's

grant summary judgment, does not require a plaintiff to plead whether or not a defendant was a

voting member on a committee to survive a motion to dismiss.

Accordingly, with respect to Plaintiff's First Amendment retaliation claim, Defendants'

Motion to Dismiss is DENIED.

## V.     CONCLUSION

For the foregoing reasons, Defendants' Motion is GRANTED in part and DENIED in part.

Plaintiff's allegations relating to the FCA claim are DISMISSED WITH PREJUDICE. Defendants

shall file an answer to the SAC within twenty (20) days from the date of this Order.

**IT IS SO ORDERED**.

Dated: October 23, 2013

_____
JOSEPH C. SPERO
United States Magistrate Judge